IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FREDERICK MUTUAL INSURANCE CO., *Plaintiff*, v. JEE PAINTING LLC, *et al.*, *Defendants*. | Civil Action No. 2:25-cv-10<br>Hon. William S. Stickman IV |

**MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiff Frederick Mutual Insurance Company ("Frederick Mutual") moves the Court to grant summary judgment pursuant to Federal Rule of Civil Procedure 56, arguing that there are no genuine disputes as to material facts and judgment should be entered as a matter of law regarding the obligations under a business liability policy. (ECF No. 32). Defendants Jose David Rodriguez Corona ("Corona") and JEE Painting LLC ("JEE") filed cross motions for summary judgment. (ECF No. 36); (ECF No. 39). For the following reasons, Frederick Mutual's motion will be granted, and Corona's and JEE's motions will be denied.

## I. Factual Background

On or about September 22, 2023, Corona was severely injured after falling from a ladder. (ECF No. 37, p. 1). At the time, Corona was working for JEE.[1] (*Id.*). JEE was a subcontractor under Bella's Army Painting ("Bella's") and was insured by a business liability policy[2] ("Policy")

---

[1] JEE Painting LLC is owned by Jaime Espinosa ("Espinosa"). (ECF No. 37, p. 5).

[2] Policy No. BP202101558. (ECF No. 42-2).

by Frederick Mutual at the time of the accident. (*Id.*). JEE was not insured under a workers' compensation policy, but Bella's was. (*Id.*). As a result, two actions were brought by Corona. The first was a workers' compensation petition ("Workers' Compensation Petition") that was filed against Bella's alleging that it was the statutory employer. (*Id.*). As the uninsured party, JEE was named in the Worker's Compensation Petition but no independent claim was ever filed against JEE in the worker's compensation context. (*Id.* at 1—2). The second was a tort action ("Underlying Action") against Bella's that JEE filed in the Court of Common Pleas of Allegheny County, Pennsylvania.[3] (ECF No. 33, p. 1).

The Worker's Compensation Petition was filed before a Workers' Compensation Judge on October 18, 2023. (ECF No. 42-4, ¶ 1). The Underlying Action was brought on May 20, 2024. (ECF No. 33, p. 1). Pursuant to the Policy, Frederick Mutual defended JEE in the Underlying Action. (ECF No. 32, ¶ 20). The Worker's Compensation Petition was bifurcated at the request of the parties to first settle the issue of whether Corona was an employee of JEE's and whether Bella's was the statutory employer for the purposes of the Pennsylvania Workers' Compensation Act ("PWCA"). (ECF No. 42-4, Procedural History ¶¶ 6—7). On February 5, 2025, the Worker's Compensation Judge ruled on these issues. (*Id.* at 2). The Worker's Compensation Judge held that Corona was an employee of JEE for the purposes of the PWCA at the time of the accident. (*Id.* Conclusions of Law ¶ 5).

As a result, Frederick Mutual brought this action seeking a declaratory judgment that it was not obligated to defend per two different exclusions to the liability coverage JEE held, (ECF No. 1, p. 1). According to Frederick Mutual, because Corona was employed by JEE at the time of the accident, he was not covered by the Policy, (ECF No. 32, ¶¶ 4, 8). Per the terms of the Policy,

---

[3] Case No. GD-24005700. (ECF No. 33, p. 1).

employees of the insured are excluded from coverage. Frederick Mutual argues that it is entitled to reimbursement for the costs of litigating the Underlying Action. (ECF No. 42-2, p. 86). Specifically, Frederick Mutual seeks a judgment that (1) "it has no duty or obligation to defend JEE Painting and/or any other person or entity under the Policy" as it relates to the Underlying Action, (2) that it "has no duty to indemnify JEE Painting and/or any other person or entity under the Policy" as it relates to the Underlying Action, and that (3) it "is entitled to reimbursement for defense costs incurred in defending JEE in the Underlying Action from January 24, 2024 to present."[4] (ECF No. 32, p. 4). Conversely, Corona seeks a declaration that neither of the listed exclusions in the Policy apply so that he is covered under the Policy. (ECF No. 36, ¶¶ 10, 17). JEE seeks a declaration that Frederick Mutual has an "obligation to defend and indemnify JEE" for the Underlying Action and that Frederick Mutual is "not entitled to be reimbursed for any costs it incurs in defending JEE" in the Underlying Action. (ECF No. 40, p. 19).

## II. Standard Of Review

Summary judgment is warranted if the Court is satisfied that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it must be decided to resolve the substantive claim or defense to which the motion is directed. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

[4] January 24, 2024, is not an arbitrary date. Frederick Mutual issued a reservation of rights letter to JEE informing it of potential limitations to coverage. The letter states Frederick Mutual's belief that Corona was employed by JEE and further that the letter served "as notification from Frederick Mutual to [JEE] that there may not be coverage and that it is reserving its rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs." (ECF No. 1-3, p. 3). The letter listed both exclusions and stated that "it is unlikely that coverage has been triggered under the Policy for the claims being asserted against JEE." (*Id.* at 2).

*Id.* The Court must view the evidence presented in the light most favorable to the nonmoving party. *Id.* at 255. It refrains from making credibility determinations or weighing the evidence. *Id.* "[R]eal questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof[]" will defeat a motion for summary judgment. *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007).

"When both parties move for summary judgment, '[t]he court must rule on each party's motion on an individual and separate basis, determining for each side whether a judgment may be entered in accordance with the Rule 56 standard.'" *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (quoting 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2720 (3d ed. 2016)). Under the same rule, if upon review of a party's motion for summary judgment, the court, viewing the evidence in the light most favorable to the nonmoving party, enters summary judgment for the moving party, the court may properly declare the opposing party's cross-motion for summary judgment as moot. *Beenick v. LeFebvre*, 684 F. App'x 200, 205—06 (3d Cir. 2017).

## III. ANALYSIS

There are no genuine disputes of material fact. All parties agree on what occurred and when. The crux of the matter before the Court is the determination of Corona's status—was he an employee or a temporary worker? This question is answered by analyzing the definition of the word "furnish" as the parties intended it to mean within the Policy. For the following reasons, the Court holds that "furnish" requires the actual provision of a worker and not a mere verbal suggestion. This determination is based upon the plain and unambiguous meaning of "furnish" in the Policy as the Court predicts the Supreme Court of Pennsylvania would rule. It is also based

upon a textual analysis of the Policy. To the degree that public policy arguments ought to be considered, this narrower definition of "furnish" is also consistent on that basis.

**A. Corona Was Not "Furnished" to JEE Under the Policy.**

The Court will first discuss the meaning of the word "furnish" within the context of the Policy. Under an endorsement to the standard policy titled PENNSYLVANIA CHANGES – DEFENSE COSTS, Frederick Mutual reserved the right to reimbursement for litigation costs associated with defending the insured party should the insured party be determined to not be covered by the Policy in the first place. (ECF No. 42-2, p. 86). The Policy states that:

> If we initially defend an Insured or pay for an Insured's defense but later determine that none of the claims, for which we provided a defense or defense costs, are covered under this insurance, we have the right to reimbursement for the defense costs we have incurred.
>
> The right to reimbursement under this provision will only apply to the costs we have incurred after we notify you in writing that there may not be coverage and that we are reserving our rights to terminate the defense or the payment of defense costs and to seek reimbursement for defense costs.

(*Id.* at 86).

Section II of the Policy, in part, details the scope of the coverage and the exclusions under the Policy itself. (*Id.* at 45, 47). Exclusion e. "Employer's Liability" under this section states that the Policy shall not apply to:

> "Bodily Injury" to:
>
> (1) An "employee" of the Insured arising out of and in the course of:
>
> a. Employment by the insured; or
>
> b. Performing duties related to the conduct of the insured's business; or
>
> (2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

> This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

(*Id.* at 47—48).

Section II also contains a list of definitions that are relevant. (*Id.* at 57—58). Under the Policy, the definition of an employee specifically excludes "a 'temporary worker.'" (*Id.* at 58). A temporary worker "means a person who is *furnished to [the insured]* to substitute for a permanent 'employee' on leave or to meet seasonal or short-term workload conditions." (*Id.* at 60) (emphasis added).

The nesting doll of exclusions can easily be sorted. Employees are excluded from coverage under the Policy. If Corona is an employee, then the Policy does not apply. However, as stated, if Corona is a temporary worker as defined by the Policy, then he is removed from the definition of employee and brought back under the umbrella of the Policy's coverage. A temporary worker is someone that is furnished to the insured either to fill a vacancy due to leave or furnished to meet seasonal demands.[5] (*Id.*). Corona would have had to have been furnished for one of these two purposes. As Corona was meeting seasonal demands,[6] the question of Corona's status as an employee of JEE's turns on the definition of "furnish" within the context of the Policy.

---

[5] *See Am. Fam. Mut. Ins. Co. v. Tickle*, 99 S.W.3d 25, 30 (Mo. Ct. App. 2003) (applying a grammatical analysis to conclude that "furnished" modifies both the vacancy requirement and the seasonal requirement).

[6] There is no contention that Corona was not working to fill "seasonal or short-term workload conditions." (ECF No. 37, p. 5). The statements from Espinosa's deposition are clear that Corona was hired "only for the summer" during the "busy season." (*Id.*). Further, no party disputes this, instead focusing on the first element of the "temporary worker" definition, that of whether Corona was furnished to JEE. (*See* ECF Nos. 32, 36, 39).

"A federal court sitting in diversity must apply state substantive law." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (citing *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000)). The interpretation of the scope, meaning, and provisions of a contract is "typically govern[ed]" by state law. *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 58 (3d Cir. 2018) (citing *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 181 (3d Cir. 2017)). "Under Pennsylvania law, an insurance contract is governed by the law of the state in which the contract was made." *Centennial Ins. Co. v. Meritor Sav. Bank, Inc.*, Civ. A. No. 91-6346, 1992 WL 164906, at *2 (E.D. Pa. July 6, 1992) (citing *Crawford v. Manhattan Life Ins. Co.*, 221 A.2d 877, 880 (Pa. Super. Ct. 1966)). The contract is made at the place of delivery. *Carosella & Ferry, P.C. v. TIG Ins. Co.*, 189 F. Supp. 2d 249, 252 (E.D. Pa. 2001). The record indicates that the Policy was mailed to JEE at a Pennsylvania address and so the place of delivery is Pennsylvania. (ECF No. 1-1, p. 2). Further, no party disputes that Pennsylvania interpretive principles apply, and indeed the parties direct the Court to consider Pennsylvania law for interpretations of the Policy. (ECF Nos. 33, 37, 40).[7] Therefore, the Court will apply Pennsylvania law.

Insurance policies are interpreted according to traditional contracts principles. *Gallagher v. GEICO Indem. Co.*, 201 A.3d 131, 137 (Pa. 2019). When the meaning of the terms is clear and unambiguous, the Court is bound to give them full effect. *Nautilus Ins. Co. v. Gardner*, No. Civ.A. 04-1858, 2005 WL 664358, at *4 (E.D. Pa. Mar. 21, 2005). "A policy term is ambiguous if it is

---

[7] None of the parties have suggested that any law other than Pennsylvania law should apply and all have cited to Pennsylvania law as authoritative, with JEE specifically arguing that Pennsylvania law is proper. (ECF No. 40, p. 5). The facts are also consistent with the application of Pennsylvania law. (ECF No. 34.) The Underlying Action was based on a workplace accident that occurred in Mars, Pennsylvania. (ECF No. 40, p. 1). Both the Underlying Action and the Workers' Compensation Petition were heard in Pennsylvania courts. (*Id.* at pp. 2—3). Lastly, as previously stated, the contract is presumed to be made at the place of delivery, which is also in Pennsylvania. (ECF No. 1-1, p. 2).

reasonably susceptible to different constructions and capable of being understood in more than one sense." *Id.* However, the words "may not be tortured … to create ambiguities where none exist." *Pac. Indem. Co. v. Linn*, 766 F.2d 754, 761 (3d Cir. 1985).

"Pennsylvania courts have not addressed the use of the verb 'furnish' in an insurance policy's definition of 'temporary worker,' and whether the concept of an employer 'furnishing' a worker to someone else is ambiguous."[8] *Nationwide Agribusiness Ins. Co. v. Sheriff*, No. 1:14-cv-2082, 2015 WL 365679, at *4 n.2 (M.D. Pa. Jan. 27, 2015). Despite this, both the Eastern and Middle Districts of Pennsylvania have predicted that Pennsylvania courts would hold that "furnish" is not ambiguous. *Nautilus*, 2005 WL 664358, at *7; *Empire Fire & Marine Ins. Co. v. Jones*, 739 F. Supp. 2d 746, 763 (M.D. Pa. 2010). The Court agrees with these sister courts for similar reasons.

*Black's Law Dictionary* defines the word "furnish" as to "supply, provide, or equip, for accomplishment of a particular purpose." *Furnish*, *Black's Law Dictionary* (6th ed. 1990). Defendants argue that either the definition should be understood broadly to include a verbal recommendation from a third party as to whom to hire, (ECF No. 49, p. 5), or that the definition of "furnish" is ambiguous and as such should be construed against Frederick Mutual, (*id.* at 3); (ECF No. 43, pp. 5—6). This argument requires stretching the common-sense understanding of how the word "furnished" is used.

---

[8] Other states have also adhered to the narrow definition of "furnish" in similar types of contracts. For example in, *Nationwide Mut. Ins. Co. v. Allen*, 850 A.2d 1047, 1057 (Conn. App. Ct. 2004), the Connecticut Appellate Court held that "the temporary worker language is clear and unambiguous" because a "temporary worker is a person who must be 'furnished' to the insured to substitute for a permanent employee on leave or to meet seasonal or short-term workload conditions." It went on to note that the worker in question was not furnished because the employer in question did not seek out "an employment agency, manpower service provider or any similar service." *Id.*

If someone paid to have their apartment furnished, they would not be satisfied by receiving a list of recommended pieces of furniture. If one member of a group of friends going hiking promised to furnish drinks for all hikers on the hike, the group would rightly be displeased to learn that only a list of recommended drinks, and not the drinks themselves, were being provided. Indeed, it would be wholly consistent with the use of "furnish" to say that one furnished a *recommendation* as something distinct from the object of the recommendation. Defendants' argument collapses the grammatical and definitional distinctions between furnishing a recommendation and furnishing the thing itself.

The definitions of the other words within the *Black's Law Dictionary* definition for "furnish" – i.e., "supply," "provide," or "equip." – are also consistent with this understanding. *Furnish*, *Black's Law Dictionary* (6th ed. 1990). "Supply" is defined as, interestingly, to "furnish with what is wanted; available aggregate of things needed or demanded; anything yielded or afforded to meet a want; and the act of furnishing with what is wanted." *Supply*, *Black's Law Dictionary* (6th ed. 1990). Implicit in the definition of "supply" is the understanding that "furnish" requires the actual provision of the thing wanted. The Court finds that furnishing workers means to actually provide workers and not simply provide recommendations about workers.

Other courts which have examined this issue reached similar determinations based on the facts and similar contractual provisions. The Court finds those decisions persuasive. In *Empire*, the worker at issue was found to be employed by two parties. 739 F. Supp. 2d at 754. The primary employer testified that he had recommended the worker to the secondary employer over dinner. *Id.* at 750. The worker was injured while working for the secondary employer. *Id.* The issue was that coverage was contingent upon the status of the worker. *Id.* at 753—54. If the worker was furnished by the primary employer to the secondary employer, then he was covered under the

business liability policy. *Id.* at 754. If he was not furnished to the secondary employer, then that appellation of secondary employer would remain accurate, and the worker would be excluded from coverage under the policy. *Id.* The court's analysis turned primarily on the issue of control, and it found that the primary employer had no control over the worker's actions while with the secondary employer. *Id.* The worker was free to work for the secondary employer, or not, and was similarly exclusively under the supervision and direction of the secondary employer while working there. *Id.* A mere verbal recommendation did not give rise to any level of control such that the worker could be considered "furnished" within the meaning of the liability policy. *Id.* at 755.

The *Nautilus* court similarly did not find "furnish" to be ambiguous, relying on the plain meaning in the context of the contract and dictionary definition. *Nautilus*, 2005 WL 664358, at *7. It recognized that "furnish" required some actual provision of the worker in question, and concluded that because no such provision occurred, the worker was an employee and was excluded by the policy. *Id.* Tellingly, while Defendants argue that the meaning of furnish is ambiguous, they provide no examples of it being used in a way consistent with mere suggestions.[9]

Here, JEE hired Corona based on a verbal recommendation from his friend, Jairo Alcala ("Alcala"). (ECF No. 37-4, p. 3). Despite the verbal recommendation, the element of control the Workers' Compensation Judge examined was nearly identical to the court in *Empire*. (ECF No. 42-4, pp. 6—7, 8—10). Corona did not possess his own tools or equipment. (*Id.* at 10). He was

---

[9] The definition of "furnished" seems to be consistent with the narrow definition regardless of the context. The liability for an automobile accident in *Gradler* was contingent upon whether the vehicle involved in the accident was "furnished by plaintiff's employer." *Gradler v. Prudential Prop. & Cas. Ins. Co.*, 464 F. Supp. 575, 577 (W.D. Pa. 1979). The court relied on *Black's Law Dictionary*, which defined "furnish" as to "supply or provide" for use "in the accomplishment of a particular purpose," a definition nearly identical to the one relied upon here. *Id.* at 579. The court ultimately determined that because the vehicle was owned by the employer in his capacity as president and furnished—that is, physically provided—to the employee, it triggered the insurance provision in accordance with the plain meaning of "furnish." *Id.* at 578.

paid a salary, not per completed job. (*Id.*). At all times, JEE maintained control and supervision over Corona, including setting his hours and dictating duties. (*Id.* at 9). There is no contention that Alcala—the friend recommending Corona—had any sort of control over Corona. (*See id.*). For these reasons the Court holds that Corona was not "furnished" to JEE.

### B. Public Policy Supports the Narrow Definition of "Furnish."

As previously stated, the plain meaning of "furnish" is the most important determination when resolving a contract dispute of this nature, but it is worth noting that public policy considerations align with the narrow definition of "furnish." The purpose of the PWCA "is remedial in nature and designed to protect workmen and their dependents suffering economic damages from work-related injuries." *McCusker v. W.C.A.B. (Rushton Mining Co.)*, 639 A.2d 776, 781 (Pa. 1994) (quoting *Bethenergy Mines, Inc. v. Workmen's Comp. Appeal Bd. (Sadvary)*, 570 A.2d 84, 86 (Pa. 1990)); *see also Madera Sugar Pine Co. v. Indus. Accident Comm'n of State of Cal.*, 262 U.S. 499, 501 (1923) (stating that "[t]he object of such acts is single—to provide for the liability of the employer to make compensation for injuries received by an employee, whether to the employee himself or to those who suffer pecuniary loss by reason of his death" (internal citation omitted)). This is in stark contrast with business liability insurance, of which the primary purpose is to protect the insured from liabilities they incur by harming third parties. *Atain Ins. Co. v. Kaz Tire, Inc.*, CIVIL ACTION NO. 21-3651, 2021 WL 5330371, at *5 (E.D. Pa. Nov. 16, 2021). Between programs like the PWCA and liability insurance, the insured is insulated against all those whom they might foreseeably harm, either their employees under the PWCA, or third parties under their general business liability insurance. This creates a neat bifurcation of protections. Liabilities to employees are covered under the PWCA and liabilities to third parties are covered under business liability insurance.

Given that, it is little wonder that the Policy contains broad exclusions for precisely the sorts of individuals covered under the PWCA. The Policy is designed with the recognition of this bifurcation and the drafters crafted the contours of coverage to prevent needless overlap. Section (d) is the exclusion for workers' compensation laws and disclaims "any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law." (ECF No. 1-1, p. 48). Section (e) directly following it is the employee exclusion which disclaims coverage for employees of the insured arising out of "[e]mployment by the insured" or "[p]erforming duties related to the conduct of the insured's business." (*Id.*). If employees are covered as a matter of statute by the PWCA, then additional liability coverage is largely superfluous and would only serve to unnecessarily inflate the cost of the business liability policy for companies that are already paying per the PWCA.

Given this reality, the nature of the specific exclusion for furnished workers makes far more sense. A furnished worker is one who is actually, physically, provided to the insured. That entails some sort of employment relationship between the furnished worker and the furnishing employer, whereby the former would be under the latter's PWCA policy. *See Acosta v. Heart II Heart, LLC*, Civil Action No. 2:17-cv-1242, 2019 WL 5197329, at *3 (W.D. Pa. Oct. 15, 2019); *Wenninger v. HTSS, Inc.*, 253 A.3d 255 (Pa. Super. Ct. 2021) (unpublished table decision) (recognizing that staffing agencies are responsible for paying workers' compensation benefits for the employees contracted out for work). They are, for all intents and purposes, an employee in the bifurcation context—just not an employee of the *insured* primarily. They are, then, *not* covered by the PWCA policy of the employer receiving the furnished worker. This opens the insured to potential litigation, thereby creating the need for business liability insurance to protect the insured under such circumstances.

A worker that is not furnished in this manner does not have the coverage granted by the would-be furnisher's PWCA policy. There would be no employment relationship with the furnishing staffing agency. They simply work directly for the insured and are brought under the umbrella of the insured's workers' compensation policy as an employee.[10] Hence, the Workers' Compensation Judge found that Corona was employed by JEE. (ECF No. 42-4, p. 11). He further found that Corona would have been under JEE's workers' compensation policy if it had held one, as required by statute. (ECF No. 42-2, p. 12). This comports with the narrower understanding of "furnish." Any sensible liability insurance policy which seeks to avoid superfluous coverage would exclude all individuals furnished by staffing agencies, or through similar mechanisms. If Corona had been physically or contractually provided by another employer to meet short-term or seasonal demands to JEE, this furnishing employer would have coverage under the PWCA, as it would be Corona's statutory employer. In that case, JEE's—or in actuality Bella's—PWCA policy would not apply, creating the need for the temporary-worker coverage the Policy includes.

Defendants' argument allows for someone to exist on both sides of the bifurcation simultaneously. Corona would be a third party (temporary worker) under the Policy because of a verbal recommendation that supposedly meets the definition of "furnish" and he would also be an employee under the PWCA because there is no other master/servant relationship with a staffing agency—or something similar—that bears the burden of maintaining a PWCA policy. Corona would be under both the PWCA *and* the business liability insurance resulting in superfluous coverage.

---

[10] While the determination was specifically whether or not Corona was an employee for the purposes of the PWCA, the analysis is identical to a traditional common-law master/servant analysis. (ECF No. 42-2, p. 11). It was based on those factors that Corona was determined to be employed by JEE in the Workers' Compensation Petition. (*Id.* at 11—12).

Therefore, the Court finds that the meaning of "furnish" under the policy is not ambiguous and predicts that Pennsylvania courts would also hold such. "Furnish" requires some actual, physical provision of the employee to the secondary employer. A verbal recommendation as to the quality of a prospective employee does not rise to that level. As there are no facts in dispute, resolving the dispute regarding the definition of "furnish" is determinative of the entire controversy. The Court holds that Corona was an employee of JEE at the time of the accident and the Section (e) exclusion bars coverage under the Policy. Frederick Mutual is entitled to reimbursement for legal costs associated with the Underlying Action and is not required to indemnify JEE.[11]

## IV. Conclusion

For the reasons set forth above, Frederick Mutual's motion will be granted. Corona's and JEE's respective motions will be denied. Orders of Court will follow.

BY THE COURT:

s/ William S. Stickman IV
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

October 28, 2026
Date

[11] The determination of "furnish" under the Policy resolves the controversy before the Court in its entirety, and so the Court does not address Frederick Mutual's additional justifications for its position, including the PWCA exclusion under Section d. or any potential binding effect from the Workers' Compensation Judge on a collateral estoppel theory.